## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>        Plaintiff,<br><br>v.<br><br>DAVID B. RAUSCH, Director of the<br>Tennessee Bureau of Investigation in his<br>official capacity,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)      No. 1:22-cv-01131-STA-jay<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION TO DISMISS

This case is one of a series of recent court challenges to the Tennessee Sexual Offender and Violent Sexual Offender Registration Verification and Tracking Act ("the Act"). Like other individuals subject to the requirements of the Act, Plaintiff John Doe is a convicted sex offender.[1] Plaintiff alleges that retroactive amendments to the Act violate his constitutional rights. Plaintiff

---

[1] Plaintiff filed a Motion to Proceed Under Pseudonym and for Protective Order (ECF No. 2) in conjunction with the opening of his case. Plaintiff seeks leave to proceed under the pseudonym John Doe to protect his privacy interests and shield his family from embarrassment. Defendant has never responded to the Motion, and the Court finds that the request is well taken. The Court will grant Plaintiff leave to pursue his claims under a pseudonym.

As for his request for entry of a protective order, the Court notes that the Motion referred to a proposed protective order and stated the proposed order was attached to the Motion as an exhibit. However, Plaintiff did not actually attach the proposed order to his filing. Counsel for Plaintiff emailed a copy of the proposed order to the chambers of the undersigned. At this point, there is no indication that Plaintiff has ever served Defendant with a copy of the proposed order. Under the circumstances, Plaintiff's request for a protective order will be denied but without prejudice to renew the request after counsel for Plaintiff has conferred with counsel for Defendant about the scope and content of a protective order. The Motion to Proceed under Pseudonym is **GRANTED**, and the Motion for Protective Order is **DENIED** without prejudice.

seeks injunctive relief against Defendant David Rausch, the Director of the Tennessee Bureau of Investigation, the agency with responsibility for maintaining and enforcing Tennessee's sex offender registry. Before the Court is Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 13). For the reasons set forth below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

### I.      Factual Allegations of the Complaint

The Court recites Plaintiff's factual allegations here and accepts them as true for the purpose of deciding this Motion only. On June 23, 2008, a grand jury indicted Plaintiff and charged him with Aggravated Sexual Battery for engaging in sexual contact with a minor under thirteen (13) years of age, a violation of Tenn. Code Ann. §39-13-504.  (Compl. ¶ 7.)  On November 3, 2008, Plaintiff pleaded guilty to an amended charge of Attempted Aggravated Sexual Battery, a Class C Felony. (*Id*. ¶ 8.) Plaintiff was sentenced to five (5) years in the custody of the Tennessee Department of Correction as a standard thirty percent (30%) offender. (*Id.*) As part of his sentence, Plaintiff was required to register as a sex offender with the State of Tennessee and remain on the registry for life. (*Id*.¶¶ 9, 11.) Tennessee law also required that Plaintiff remain on community supervision for life. (*Id*. ¶ 10.)

In the years since Plaintiff's conviction, Tennessee has amended the Act to add more reporting and monitoring requirements and increase the extent and number of safety zones to exclude sex offenders from protected spaces.  The Court discusses the specific amendments in more detail below.  Plaintiff alleges that the Act and its amendments have imposed various hardships on him due to his status as a registered sex offender. For example, because restrictions imposed by the Act left Plaintiff with limited options for employment, Plaintiff was only able to

find a job cutting logs. (*Id.* ¶ 29.) Plaintiff suffered an on-the-job injury when a log crushed his leg, and his injury required an amputation of his lower leg just above the knee. (*Id.*)  The Complaint does not state when Plaintiff worked in logging, how long he kept the job, or when his disabling injury occurred.  Nevertheless, his disability, along with the restrictions imposed on him by the Act, have made it even more difficult to find and secure employment. (*Id.*)

The Complaint also alleges that the Act interferes with Plaintiff's right to parent and freely associate with others. Plaintiff has two biological children, ages thirteen (13) and eight (8), from a prior relationship.  (*Id.* ¶ 30.) The Act requires Plaintiff to obtain permission from his children's school principal to attend parent-teacher conferences and other school activities. (*Id.*) Plaintiff will not take his children to school for fear that requesting permission to be on school grounds will expose his children to ridicule and harassment. (*Id*. ¶ 34.)  The Act also prohibits Plaintiff from going to various public places with his children, including the public swimming pool and parks, and permits Plaintiff to enter public libraries at the discretion of the library director. (*Id.* ¶ 31.) Plaintiff is currently engaged to be married but alleges he is unable to marry his fiancée because she has minor children. (*Id.* ¶ 32.)  The Act will not allow Plaintiff to live in the same household with his fiancée and her kids. (*Id.*)

As for the Act's reporting and monitoring requirements, Plaintiff has been arrested for failing to report and pay the annual registration fee. (*Id.* ¶ 33.) On some occasions Plaintiff has attempted to report but been unable to do so because the reporting office is open only four days a week. (*Id.*) Finally, Doe alleges he "is subject to constant surveillance and supervision along with the stigma of being a sex offender, along with potential harassment that comes from the displaying of public information on the internet. " (*Id*. ¶ 34.)

## II.   Tennessee Sexual Offender and Violent Sexual Offender Registration Verification and Tracking Act (2008)

The Court takes judicial notice that at the time of Plaintiff's conviction, Tennessee defined "Aggravated sexual battery" as "unlawful sexual contact with a victim by the defendant or the defendant by a victim" and "the victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4) (2008). Aggravated sexual battery was in 2008 and remains now a Class B felony. § 39-13-504(b) (2008). Plaintiff pleaded guilty to Attempted Aggravated Sexual Battery. Tennessee law classifies "criminal attempt" as "an offense one (1) classification lower than the most serious crime attempted . . . ," § 39-12-107(a), making attempted aggravated sexual battery a Class C felony.

The 2008 version of the Act contained the following provisions. First, the Act defined certain crimes as "violent sexual offenses," including "Aggravated Sexual Battery," § 40-39-202(28)(C) (2008), and the criminal attempt to commit such a crime. § 40-39-202(28)(P) (2008). The Act identified any person who had committed an enumerated "violent sexual offense" like Attempted Aggravated Sexual Battery a "violent sexual offender."

The Act required violent sexual offenders to comply with a series of registration requirements. The offender had to register or report in person "[w]ithin forty-eight (48) hours of establishing or changing a primary or secondary residence, establishing a physical presence at a particular location, becoming employed or practicing a vocation or becoming a student" in the State of Tennessee. § 40-39-203(a)(1) (2008).  The registration form required the disclosure, among other things, of the following information:

> (1) Complete name and all aliases, including, but not limited to, any names that the offender may have had or currently has by reason of marriage or otherwise;
> (2) Date and place of birth;
> (3) Social security number;
> (4) A photocopy of a valid driver's license, or if no valid driver license has been issued to the offender, a photocopy of any state or federal government issued identification card;

(5) For an offender on supervised release, the name, address, and telephone number of the registrant's probation or parole officer or other person responsible for the registrant's supervision;

(6) Sexual offenses or violent sexual offenses for which the registrant has been convicted, the date of the offenses and the county and state of each conviction;

(7) Name of any current employers and length of employment, including physical addresses and phone numbers;

(8) Current physical address and length of residence at that address, which shall include any primary or secondary residences. For the purpose of this section, a post office box number shall not be considered an address;

(9) Mailing address, if different from physical address;

(10) Any vehicle, mobile home, trailer or manufactured home used or owned by an offender, including descriptions, vehicle information numbers and license tag numbers;

(11) Any vessel, live-aboard vessel or houseboat used by an offender, including the name of the vessel, description, and all identifying numbers;

(12) Name and address of each institution of higher education in this state where the offender is employed or practices a vocation or is a student;

(13) Race and gender;

(14) Name, address and phone number of offender's closest living relative;

(15) Whether victims of the offender's convictions are minors or adults, the number of victims and the correct age of the victim or victims and of the offender at the time of the offense or offenses, if the ages are known;

(16) Verification by the TBI or the offender that the TBI has received the offender's DNA sample;

(17) A complete listing of the offender's electronic mail address information or any instant message, chat or other Internet communication name or identity that the person uses or intends to use;

(18) Whether any minors reside in the primary or secondary residence[.]

§ 40-39-203(i) (2008).  The offender was also required to submit fingerprints and be photographed.

§ 40-39-203(i)(19)(A) & (B) (2008).

The Act further required offenders to keep their registration information updated.  "Violent sexual offenders" like Plaintiff had to report in March, June, September, and December each year "to the designated law enforcement agency to update the offender's fingerprints, palm prints and photograph, as determined necessary by the agency, and to verify the continued accuracy of the information in the TBI registration form." § 40-39-204(b) (2008). Offenders also had the duty to update their registration within 48 hours when any fact disclosed on the registration form had

changed. § 40-39-203(a)(4) (2008). This included any "material change in employment or vocation status." § 40-39-203(a)(6) (2008).[2]

Once a "violent sexual offender" made a required disclosure as part of his registration, the Act deemed the following information "public information": (1) the offender's full name (and any aliases); (2) date of birth: (3) the offender's violent sexual offense of conviction; (4) full primary and secondary addresses; (5) race and gender; (6) the date of most recent verification of the information; (7) most recent photograph submitted to TBI; (8) driver's license number and issuing state; and (9) parole or probation officer. § 40-39-206(e) (2008). The Act directed the TBI to make the information available as a public record, publish the information on the State of Tennessee's internet homepage, and share the information with the public upon request by calling the "Tennessee Internet Criminal Information Center Hotline." *Id*.

The Act made any failure to make a required disclosure or to report as required by law a Class E felony, punishable by a fine of not less than $350 and imprisonment for not less than 90 days for a first offense; by a fine of not less than $600 and imprisonment for not less than 180 days for a second offense, and by a fine of not less than $1,100 and imprisonment for not less than one year for a third or subsequent violation. § 40-39-208(c)-(e) (2008). The Act also required a violent sex offender who resided in Tennessee to obtain a valid driver's license or other photo

---

[2] The Act defined a "material change in employment or vocational status" to include "being terminated involuntarily from the offender's employment or vocation, voluntarily terminating the employment or vocation, taking different employment or the same employment at a different location, changing shifts or substantially changing the offender's hours of work at the same employment or vocation, taking additional employment, reducing the offender's employment or any other change in the offender's employment or vocation that differs from that which the offender originally registered" and only where such a change remained "in effect for five (5) consecutive days or more." § 40-39-203(a)(6).

identification and keep the license or identification in his possession at all times. § 40-39-213 (2008).

In addition to the reporting and monitoring requirements, the Act contained a number of restrictions to limit the public places where violent sexual offenders could live, work, or go. The Act prohibited a violent sexual offender whose victim was a minor from living with a minor, unless the offender met the statutory definition as the minor child's "parent." § 40-39-211(c) (2008). The Act defined a "parent" to include a "biological parent, adoptive parent, or step-parent" but excluded from its definition a step-parent who had committed a violent sexual offense with a victim under 13 years old. § 40-39-202(11) (2008). The Act prohibited registered sex offenders whose victims were minors from knowingly establishing a residence, obtaining sexual offender treatment, or knowingly accepting employment within 1,000 feet of the property line of any public school, private or parochial school, licensed day care center, other childcare facility, public park, playground, recreation center or public athletic field available for use by the general public. § 40-39-211(a) (2008).[3]

The Act further prohibited a violent sexual offender from being on or remaining "on the premises of any school building or school grounds in this state when the person has reason to believe children under eighteen (18) years of age are present." § 40-39-211(d)(1)(A) (2008).  This included standing, sitting "idly, whether or not the person is in a vehicle, or remain[ing] within five hundred feet (500′) of a school building or on school grounds in this state when children under eighteen (18) years of age are present, while not having a reason or relationship involving custody of or responsibility for a student or any other specific or legitimate reason for being there."  § 40-

---

[3] Tenn. Pub. Act 1164 § 11 (2008), which took effect on July 1, 2008 and was in effect on the date of Plaintiff's conviction in November 2008, had amended § 40-39-211(a) to increase the safety zone around these protected spaces from 500 feet to 1,000 feet.

39-211(d)(1)(B) (2008).  These school-related prohibitions did not apply when the registrant was on school grounds for otherwise legitimate purposes like "attending an academic conference or other scheduled school event with school officials as a parent or legal guardian of a child who is enrolled in the school and is participating in the conference or event" or "dropping off or picking up a child or children and the person is the child or children's parent or legal guardian" or is "temporarily on school grounds, during school hours, for the purpose of making a mail, food or other delivery." § 40-39-211(d)(2)(B), (D), & (E) (2008).

### III.    Subsequent Amendments to the Act Following Plaintiff's Conviction

The Act has been amended several times subsequent to Plaintiff's conviction, including, as relevant here, in 2009, 2010, 2011, 2014, and 2015.[4]  Tenn. Pub. Act 597 (2009) modified one section of the Act, Tenn. Code Ann. § 40-39-211(d), which had previously prohibited sex offenders being on the premises of or standing or sitting idly or remaining within five hundred feet of a school building or on school grounds when children under eighteen years old are present without reason, in three significant ways.  First, the 2009 amendment went beyond public schools and expanded the types of protected locations to include any "private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field."Tenn. Code Ann. § 40-39-211(d)(1)(A) & (B) (2009). Second, the 2009 amendment increased the distance a sex offender had to keep from these protected places from 500 feet to 1,000 feet. *Id*.  Third, the 2009 amendment measured the distance a sex offender had to keep from

---

[4] In a section of the Complaint titled "Factual Allegations," Plaintiff has recited the relevant amendments.  The amendments are not so much "factual allegations" as "legal conclusions" about statutory interpretation. In fact, the Complaint contains several misstatements regarding the statutes, all noted below, which the Court need not accept as true at the pleadings stage. *Fisher v. Perron*, 30 F.4th 289, 294 (6th Cir. 2022) (holding that "the presumption of truth is inapplicable to legal conclusions"). For purposes of deciding the Motion to Dismiss, the Court simply recites the relevant code section as they appear in the Tennessee Code Annotated.

the protected place not just from a building but from the property line where the building or other protected area was located. *Id.*

Tenn. Pub. Act 1138 (2010) modified several sections of the Act. The 2010 amendment, Tenn. Code Ann. § 40-39-203, required the Tennessee Bureau of Investigation to obtain copies of all passports and immigration documents of sex offenders, as well as professional licensing information. §40-39-203 (2010).[5] The 2010 Amendment also modified Tenn. Code Ann. § 40-39-206 to increase the amount of information deemed public information and requiring offenders to report pseudonyms and ethnic or tribal names, a physical description of the offender, the text of the law defining the offender's crime, the offender's complete criminal record, the offender's employer, and the license plate number and description of the offender's vehicles. § 40-39-206(d) (2010). Section 40-39-213(a), as amended by the Tenn. Pub. Act 1138 (2010), required registered sex offenders who resided in Tennessee and were eligible to obtain a valid driver's license or photo identification and keep it in their possession within sixty days of the date in which they were required to register.[6]

---

[5] Plaintiff's complaint alleges § 40-39-209 created this requirement. As this requirement is found in § 40-39-203, the Court presumes that is the statute Plaintiff intended to cite.

[6] Plaintiff's complaint alleges it is § 40-39-312(a) that creates this requirement. Compl. ¶ 21. As that statute does not seem to exist, the Court presumes Plaintiff meant § 40-39-213(a). The Complaint also states that the 2010 Amendment modified Tenn. Code Ann. § 40-39-204(b) to require violent sexual offenders to report to a designated law enforcement agency every three months to update the offender's fingerprints, palm prints and photographs, and to verify the continued accuracy of the information in the TBI registration form. Compl. ¶ 22. Upon closer inspection, this reporting requirement was already part of § 40-39-204(b). The 2010 amendment just made a grammatical change to the paragraph; it did not alter the substantive requirement for quarterly reporting.

Tenn. Pub. Act 1145 (2010) added a new subsection (h) to Tenn. Code Ann. § 40-39-211, which prohibited two or more sexual offenders from cohabitating in the same residence.[7]

Tenn. Pub. Act 266 (2011) amended Tenn. Code Ann. § 40-39-204 to place additional restrictions on international travel. Specifically, it required offenders to report to the designated law enforcement agency at least twenty-one days prior to travelling out of the country in most situations.

Tenn. Pub. Act 287 (2011) created Tenn. Code Ann. § 40-39-216, which gave public libraries powers to reasonably restrict the access of anyone on the sex offender registry.

The Tennessee legislature passed three separate bills at issue in 2014. Tenn. Pub. Act 992 (2014) added subdivision (a)(2) of § 40-39-211(a), which provides that no sexual offender whose victim was a minor shall knowingly establish a residence, obtain sexual offender treatment, or accept employment within one thousand feet of the property line of any public school, private or parochial school, licensed day care center, other childcare facility, public park, playground, recreation center, or public athletic field available for use by the general public.[8]  Tenn. Pub. Act 751 (2014) created Tenn. Code Ann. § 40-39-217, which authorizes local governments to establish

---

[7] The Court takes judicial notice that § 40-39-211(h) has since been amended to prohibit three or more sexual offenders from cohabitating.

[8] The Court takes judicial notice that Tenn. Pub. Act 1164 § 11 (2008), which took effect on July 1, 2008 and was in effect on the date of Plaintiff's conviction in November 2008, already prohibited registered sex offenders whose victims were minors, such as Plaintiff, from knowingly establishing a residence, obtaining sexual offender treatment, or knowingly accepting employment within 1,000 feet of the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public. Tenn. Pub. Act 1164, § 11 (2008). Tenn. Pub. Act 992 merely redesignated this already-existing provision as subdivision (a)(1) of Tenn. Code Ann. § 40-39-211 and added subdivision (a)(2), which at that time was identical to subdivision (a)(1) except that it extended these restrictions to offenders whose victims were adults. Tenn. Pub. Act 992, § 1 (2014).  Section 40-39-211(a) has since been amended again to contain these restrictions on all offenders within subdivision (a)(1).

notification systems to notify residents, schools, and childcare facilities when a registrant lives within a certain distance.  Tenn. Pub. Act 770 (2014) imposed lifetime registration requirements for offenders whose victims were under age twelve.

Finally, Tenn. Pub. Act 516 (2015) added additional reporting requirements, including a requirement that offenders disclose their email address, usernames, social media accounts, instant messages, other internet communication platforms or devices, and the offender's username, screen name, or any other method by which the offender accesses accounts or websites.  The Act also prohibited an offender from being alone with a minor in a private area.

Based on the well-pleaded facts of the Complaint, Plaintiff alleges in four counts that the Act as amended violates various provisions of the Constitution: (1) the Ex Post Facto Clause, (2) the Fourteenth Amendment Due Process Clause by imposing enhanced penalties that did not exist when he pleaded guilty to his crime in 2008, (3) his substantive rights under the Due Process Clause, specifically, his fundamental rights to parent, work, and travel, and (4) his First Amendment rights to freedom of speech and association.  Defendant moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6), alleging Plaintiff has failed to adequately state his claims. Defendant also argues Plaintiff's retroactive-punishment Due Process claim is time-barred.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The complaint must contain sufficient facts to "state a claim to relief that is plausible on its face," meaning it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  The complaint need not set forth "detailed factual allegations," but it must include more than "labels and conclusions," "a formulaic

recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement." *Id.* at 555.

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint for failure to comply with the requirements of Rule 8(a)(2).  Fed. R. Civ. P. 12(b)(6).  When considering a 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015) (internal citation omitted).

## ANALYSIS

### I.      Violation of the Ex Post Facto Clause

The Constitution provides that "No State shall . . . pass any . . . ex post facto Law."  U.S. Const. art. I, § 10, cl. 1.  The Ex Post Facto Clause prohibits state legislatures from enacting a law that "imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed."  *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (internal citation omitted).  Plaintiff's Complaint alleges that Plaintiff pleaded guilty in 2008 to an offense the State of Tennessee classified as a "violent sex crime." As a convicted violent sex offender, Plaintiff was and remains subject to the terms of the Act.  The Complaint cites and describes amendments to the Tennessee Act from 2009, 2010, 2011, 2014, and 2015, covering everything from reporting requirements to limitations on where sex offenders like Plaintiff could live, work, or "sit idly." The amendments required sex offenders to submit

- copies of all passports, immigration documents, and professional licensing information, Tenn. Pub. Act 1138 (2010), and notify authorities a minimum of 21 days before traveling internationally, Tenn. Pub. Act 266 (2011);
- email addresses, usernames, and social media accounts, Tenn. Pub. Act 516 (2015);
- aliases, married names, pseudonyms, and ethnic or tribal names, Tenn. Pub. Act 1138 (2010);
- the address of the offender's employer, *id.*;

- the license plate number and a description of the offender's vehicle(s), *id.*

The amendments also compelled violent sex offenders to report to authorities every three months, submit fingerprints and palm prints, sit for photographs, and otherwise keep all required disclosures up to date. Plaintiff alleges that the Act as amended has a punitive effect and therefore violates the Ex Post Facto Clause.

For the following reasons, the Court holds that Plaintiff has failed to plausibly allege a violation of the Ex Post Facto Clause as to most of the relevant amendments, though he has stated a plausible claim that one amendment violates the Ex Post Facto Clause as the State of Tennessee has applied that law to Plaintiff. As such, the Motion is **GRANTED in part, DENIED in part** on the Ex Post Facto issue.

### A. Plaintiff's As-Applied Challenge to the Act

As an initial matter, Plaintiff contests the constitutionality of the Act as the State of Tennessee has applied the law to him individually. "In an as-applied challenge, the plaintiff contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional." *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997) (quoting *Ada v. Guam Soc'y of Obstetricians and Gynecologists*, 506 U.S. 1011, 1013 (1992) (Scalia, J., dissenting)). The very nature of an as-applied challenge is that an act or statute "is unconstitutional as applied to *this* party, in the circumstances of *this* case." *City of Chicago v. Morales*, 527 U.S. 41, 74 (1999) (emphasis in original).

For purposes of deciding Defendant's Rule 12(b)(6) Motion, the Court construes the Complaint to bring an as-applied challenge to the Act. The Complaint takes aim at a series of changes to the Act as the amended requirements of the Act apply retroactively to Plaintiff, not to all registered sex offenders generally. (Compl. Prologue, ¶ 1) ("The Plaintiff Doe challenges the

retroactive application of those Amendments *as applied to him* as a violation of the United States Constitution's Ex Post Facto Clause . . . .") (emphasis added); *see also id.* ¶ 36 ("The *retroactive application of the Amendments to the Act . . . to Doe* violates the Ex Post Facto Clause of the United States Constitution . . . .").  Plaintiff seeks as relief a permanent injunction to prevent the TBI "from retroactively enforcing those amendments against" him. Prayer for Relief ¶ 1. In his separately filed Motion to Proceed Under Pseudonym and for Protective Order, Plaintiff states that he "is filing an 'as-applied' challenge to the 2009, 2010, 2011, 2014 and 2015 Amendments to Tennessee's Sex Offender statute." Pl.'s Mot. to Proceed 2 (ECF No. 2).  The Court will consider Defendant's Motion to Dismiss in light of these allegations and the fact that Plaintiff's is an as-applied challenge to the provisions of the Act.

### B.  Failure to Allege How All Amendments Apply to Plaintiff

Having determined that Plaintiff has brought an as-applied challenge to the Act, the Court holds that the Complaint fails to state any ex post facto claim based on a provision of the Act that was already in effect at the time of Plaintiff's conviction in 2008.  A law only implicates the Ex Post Facto Clause if it applies retrospectively and "changes the legal consequences of acts committed before its effective date." *Doe v. Bredesen*, 507 F.3d 998, 1003 (6th Cir. 2007).  In this instance, the version of the Act in effect at the time of Plaintiff's 2008 conviction already strictly limited many of Plaintiff's fundamental liberty interests or prohibited outright many of the life activities which form the basis of Plaintiff's constitutional claims, including the reporting requirements cited in the Complaint and Plaintiff's right to live as a step-parent in the same home with a minor step-child.

Plaintiff alleges that the Act's reporting requirements are burdensome and have at times resulted in his being cited for failure to report.  The Complaint alleges that Plaintiff has been

arrested several times since 2011 for failing to comply with the Act's reporting requirements and for failing to pay the annual registration fee. Compl. ¶ 33. Tennessee requires Plaintiff to report in March, June, September, and December. *Id.* The local reporting office is open only four days per week, which at times has prevented Plaintiff from reporting on time and resulted in charges of violating his reporting obligations. *Id*. Plaintiff's allegations notwithstanding, the 2008 version of the Act already required Plaintiff to make quarterly reports to authorities and to provide an extensive list of personal disclosures. The 2008 Act required TBI to publicize or make publicly available many of the disclosures. None of the subsequent amendments to the Act has altered any of the monetary fines or other penalties imposed for an offender's failure to report. Without some additional allegation to show how this portion of the Act has "changed the legal consequences" of Plaintiff's conviction, Plaintiff has failed to state a violation of the ex post facto principle based on the instances where the State has cited him for his failure to report.

Plaintiff also claims that the Act impairs his right to marry his fiancée and establish a home with her and her minor children from a previous relationship. *Id.* ¶ 32. The problem is that the version of the Act in effect in 2008, before the amendments listed in the Complaint had become law in Tennessee, already barred a "violent sex offender" from living with a minor, unless the offender met the statutory definition as the minor child's "parent." Tenn. Code Ann. § 40-39-211(c) (2008). The Act defined a "parent" to include a "biological parent, adoptive parent, or step-parent" but excluded from its definition a step-parent who had committed a violent sex offense with a victim under 13 years old. § 40-39-202(11). As a violent sex offender who pleaded guilty to an offense involving a victim less than 13 years old, Plaintiff was barred from living with a minor child at the time of his conviction and at all times since then.

Therefore, the Court holds that the Complaint fails to state an ex post facto claim based on the Act's reporting requirements and its prohibition on violent sex offenders living with minor children. *Cf. Does #1-5*, 834 F.3d at 698 ("It is undisputed on appeal that SORA's 2006 and 2011 amendments apply to them retroactively."). The Motion to Dismiss is **GRANTED** as to the any ex post facto claim based on a provision of the Act that was already in effect at the time of Plaintiff's conviction.

One more threshold point bears discussion. The Complaint has not alleged how Tennessee has applied all of the Amendments in Plaintiff's case. For example, the Complaint alleges that the 2010 Amendment required the TBI to obtain copies of all passports and immigration documents and professional licensing information from sex offenders. Tenn. Code Ann. § 40-39-203 (2010). The Complaint does not allege that Plaintiff holds a passport or any other immigration document or that he maintains a professional license, much less plead how the State has applied these requirements in Plaintiff's case. This allegation and others like it in the Complaint raise a question of justiciability. Where the state has not yet applied a law to a person, the person lacks an injury-in-fact and the potential harm remains "conjectural and hypothetical, rather than concrete and particularized." *Miller v. City of Wickliffe, Ohio*, 852 F.3d 497, 503 (6th Cir. 2017) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

For instance, the Complaint also refers to a 2010 Amendment, which prohibits two or more sex offenders from living together. Tenn. Pub. Act 1145 (2010).[9] But Plaintiff does not allege that authorities have cited him for living with another sex offender or that the Amendment has interfered with any concrete plan he had to reside with another sex offender. Likewise, the

---

[9] While the Complaint alleges this Amendment prohibits two or more registered sex offenders from cohabitating, the Court takes judicial notice that Tenn. Code Ann. § 40-39-211(h) has since been amended to prohibit three or more registrants from cohabitating.

Complaint alleges that public libraries have the authority to restrict or deny access to sex offenders. And yet Plaintiff has not pleaded that any particular library he wishes to enter prohibits him from doing so; he merely complains that libraries have the power to do so. It is thus entirely speculative whether this amendment as applied is an impermissible ex post facto law.

The Court concludes that in the absence of some allegation to show how the State of Tennessee has applied a specific amendment in Plaintiff's case, Plaintiff has failed to state an ex post facto claim as to that amendment. Therefore, the Motion to Dismiss ex post facto claims based on any amendment the State of Tennessee has not actually applied to Plaintiff is **GRANTED**.

### C. Plaintiff's Remaining Allegations State an Ex Post Facto Claim

Having framed Plaintiff's ex post facto claims and the nature of his as-applied challenge to the Act, the Court now turns to the merits of his remaining claim that the Act imposes retroactive punishment and abridges Plaintiff's constitutional rights. Although Plaintiff refers to a number of amendments to the Act, the only retroactively applicable amendments to the Act cited in the Complaint concern the expansion of designated safety zones around specific locations and a requirement that registered sex offenders notify administrators before coming into a protected space. As Plaintiff alleges in his Complaint, the amendments as applied to him interfere with his parental rights to be involved in the lives of his minor biological children. Compl. ¶ 30. The amendments require him to obtain prior approval to attend parent-teacher conferences and other school events. *Id*. The amendments also keep him from taking his children to public swimming pools and parks without first seeking permission from a park administrator. *Id*. ¶ 31.

As the Court has already noted, at the time of Plaintiff's conviction in 2008, the Act prohibited a violent sexual offender from being present, standing, or sitting "idly, whether or not

the person is in a vehicle, or remain[ing] within five hundred feet (500′) of a school building or on school grounds in this state when children under eighteen (18) years of age are present, while not having a reason or relationship involving custody of or responsibility for a student or any other specific or legitimate reason for being there." § 40-39-211(d)(1)(B) (2008). The Act made an exception when the offender was on school grounds for otherwise legitimate purposes like "attending an academic conference or other scheduled school event with school officials as a parent or legal guardian of a child who is enrolled in the school and is participating in the conference or event" or "dropping off or picking up a child or children and the person is the child or children's parent or legal guardian" or is "temporarily on school grounds, during school hours, for the purpose of making a mail, food or other delivery." § 40-39-211(d)(2)(B), (D), & (E) (2008).

Tenn. Pub. Act 597 (2009) modified § 40-39-211(d) in a number of important ways. The 2009 amendment went beyond just limiting an offender's right to be near public schools and expanded the list of protected locations to include a "private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field." Tenn. Code Ann. § 40-39-211(d)(1)(A) & (B) (2009). The 2009 amendment also increased the buffer zone around these protected spaces, no longer just barring sex offenders being within 500 feet of a "school building" but prohibiting them from coming within 1,000 feet of the property line of the protected space. *Id.*[10] Tenn. Pub. Act 1145 (2010) amended § 40-39-211(d) again to add that offenders may only be on school property or present in other safety zones by written invitation

---

[10] The 2009 amendment mirrored in some respects paragraph (a) of section 40-39-211, which already prohibited registered sex offenders whose victims were minors from living, working, or receiving sexual offender treatment within 1,000 feet of the property line of any public school, private or parochial school, licensed day care center, other childcare facility, public park, playground, recreation center or public athletic field available for use by the general public. § 40-39-211(a).

or with permission from a school principal or other administrator. § 40-39-211(d)(2)(B) (2010). The 2010 amendment also required an offender to provide a school principal with written notice before picking up and dropping off a child.  § 40-39-211(d)(2)(D) (2010). The 2010 amendments effectively eliminated an exception the Act had previously granted offenders who were attending their own children's school events and providing transportation for their own kids to and from school.

The changes to the Act from the time of Defendant's conviction in 2008 to the amendment in 2009 can be summarized in this mark-up version of § 40-39-211(d):

(d)(1) No sexual offender, as defined in § 40-39-202, or violent sexual offender, as defined in § 40-39-202, shall knowingly:

(A) Be upon or remain on the premises of any ~~school~~ building or **grounds of any public** school ~~grounds~~**, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public** in this state when the ~~person~~**offender** has reason to believe children under eighteen (18) years of age are present~~.~~**:**

(B) Stand, sit idly, whether or not the ~~person~~**offender** is in a vehicle, or remain within ~~five hundred~~**one thousand** feet (~~500~~**1,000**′) of ~~a school~~**the property line of any** building ~~owned~~ **owned** or ~~on~~**operated by any public** school ~~grounds~~**, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public** in this state when children under eighteen (18) years of age are present, while not having a reason or relationship involving custody of or responsibility for a ~~student~~**child** or any other specific or legitimate reason for being there; or

(C) Be in any conveyance owned, leased or contracted by a school**, licensed day care center, other child care facility or recreation center** to transport students to or from school**, day care, child care,** or a ~~school~~ **recreation center or any** related activity **thereof** when children under eighteen (18) years of age are present in the conveyance.

And the changes the 2010 amendment made to the 2008 version are shown here.

(2) Subdivision (d)(1) shall not apply when the offender:

(A) Is a student in attendance at the school;

(B) Is attending ~~an academic~~**a** conference ~~or other scheduled school event with school~~**with school, day care, child care, park, playground or recreation center** officials as a parent or legal guardian of a child who is enrolled in the school**,**

**day care center, other child care center or of a child who is a participant at the park, playground or recreation center** and ~~is participating in the conference~~**has received written permission or a request from the school's principal** or ~~event~~**the facility's administrator**;

(C) Resides at a state licensed or certified facility for incarceration, health or convalescent care**; or**

(D) Is dropping off or picking up a child or children and the person is the child or children's parent or legal guardian~~;~~ **who has provided written notice of the parent's offender status to the school's principal** or **a school administrator upon enrollment.**

~~(E) Is temporarily on school grounds, during school hours, for~~**3) The exemption provided in subdivision (d)(2)(B) shall not apply if** the ~~purpose of making~~**victim of the offender's sexual offense or violent sexual offense was** a ~~mail, food~~**minor at the time of the offense and the victim is enrolled in the school, day care center, recreation center** or other ~~delivery~~**child care center that is participating in the conference or other scheduled event**.

As the mark-up version of the statute illustrates, the 2009 amendment had the effect of expanding not just the protective zone around schools in Tennessee communities but also the types of protected spaces where violent sex offenders would be excluded unless some exception applied, for example, attending school conferences or dropping off and picking up one's own children. § 40-39-211(d)(2). Even this exception was subsequently modified when the 2010 amendment required prior permission to be on school property for school-related events.

The issue presented then is whether the Act's expansion of the protected zones around schools and other safe spaces where violent sex offenders are prohibited violates the Ex Post Facto Clause. The Ex Post Facto Clause "does not bar *all* retroactive lawmaking, but only retroactive punishment." *Does #1-5 v. Snyder*, 834 F.3d 696, 699 (6th Cir. 2016) (citing *Calder v. Bull*, 3 U.S. 386, 3 Dall. 386, 1 L.Ed. 648 (1798)). To determine whether the expansion of the safety zones inflicts retroactive punishment, the Court engages in a two-part analysis. The Court must first ask whether the Tennessee legislature intended to establish civil proceedings against sex offenders who violated the requirements of the Act. *Seling v. Young*, 531 U.S. 250, 261 (2001). Plaintiff does not seem to dispute that the Tennessee legislature amended the Act with the intent to establish

a civil enforcement regime.  The Court therefore assumes for purposes of deciding the Motion to Dismiss, that Tennessee has established a system of civil proceedings to enforce the requirements of the Act, as amended.

At the second step of its analysis, the Court must consider whether the Act is nevertheless punitive in its effect.  Assuming that Tennessee acted with the intent to create civil proceedings against sex offenders, the Court must accept its intention unless Plaintiff provides the "clearest proof," "by reference to a variety of factors," "considered in relation to the statute on its face," that Tennessee's Act "is punitive in purpose or effect."  *Id.* at 261-62.  The United States Supreme Court has developed a "non-exhaustive" list of "useful guideposts" for determining whether a law's actual effect is punitive and violates the Ex Post Facto Clause, factors the Sixth Circuit has applied to sex offender registration acts like Tennessee's: "(1) Does the law inflict what has been regarded in our history and traditions as punishment?  (2) Does it impose an affirmative disability or restraint?  (3) Does it promote the traditional aims of punishment?  (4) Does it have a rational connection to a non-punitive purpose?  (5) Is it excessive with respect to this purpose?"  *Snyder*, 834 F.3d at 701 (citing *Smith v. Doe*, 538 U.S. 84, 97 (2003)). In the final analysis, "it is the effect, not the form, of the law that determines whether it is *ex post facto*." *Id*. at 699 (quoting *Weaver v. Graham*, 450 U.S. 24, 31 (1981)).

Plaintiff focuses the bulk of his argument on the five "guideposts" from *Snyder*.  In *Snyder*, the Sixth Circuit examined two amendments to Michigan's Sex Offender Registration Act (SORA) passed after the plaintiffs' convictions. The amendments at issue in *Snyder* were novel, retroactively applicable enactments that (1) amended SORA to prohibit registered sex offenders from living, working, or loitering within 1,000 feet of a school, (2) divided registered offenders into three tiers that ostensibly correlated to current dangerousness based on their crime of

conviction, and (3) required all registrants to appear in person "immediately" to update information such as a new vehicle or "internet identifiers," (e.g., a new email account). *Id.* at 698. The Court of Appeals held that "Michigan's SORA imposes punishment," *id*. at 705, and therefore that "the retroactive application of SORA's 2006 and 2011 amendments to Plaintiffs is unconstitutional." *Id*. at 706.

The Court finds that Sixth Circuit's decision in *Snyder*, and many of its observations about Michigan's SORA, control the result in this case. Just as in the Michigan case, the balance of the relevant guideposts suggests, at least at the pleadings stage, that the 2009 and 2010 amendments to the Tennessee Act are punitive in their effect.

First, the Complaint plausibly alleges the expansion of certain safety zones inflicts on offenders what has been regarded in American history and tradition as punishment. Plaintiff alleges that the relevant amendments bar him from public recreation areas like parks and pools and strictly limit the manner in which he visits his children's schools. What is more, the same amendments prohibit Plaintiff from being present or just sitting "idly" within 1,000 feet of the property lines of all sorts of public accommodations like parks and businesses like daycare centers. In *Snyder*, the Sixth Circuit explained that similar provisions in Michigan's SORA resembled the "ancient punishment of banishment." *Id.* at 701. While SORA's prohibition on living, working, and loitering[11] within 1,000 feet of a school zone did not "prohibit the registrant from setting foot in the school zones, and certainly [did not] make a registrant 'dead in law [and] entirely cut off from society' . . . its geographical restrictions [were] nevertheless very burdensome, especially in

---

[11] Michigan's SORA defined "loiter" as "to remain [in a place] for a period of time and under circumstances that a reasonable person would determine is for the primary purpose of observing or contacting minors." *Snyder*, 834 F.3d at 699 n.1.

densely populated areas." *Id.* (quoting 1 William Blackstone, *Commentaries* *132).  The evidence in *Snyder* showed that Michigan's restrictions "forced [registered sex offenders] to tailor much of their lives around these school zones, and . . . they often have great difficulty in finding a place where they may legally live or work." *Id.* at 702.  The Court of Appeals concluded then that Michigan's SORA imposed what had been regarded in our tradition and history as a punishment.

The two laws, Michigan's and Tennessee's, are not identical, and yet the Tennessee Act arguably goes further. Like Michigan, Tennessee has placed geographical restrictions on sex offenders, resembling the "ancient punishment of banishment," particularly the prohibition on being present or sitting idly within 1,000 feet of schools and a variety of other public areas and facilities where children are often found. At the time of Plaintiff's conviction, the Tennessee Act prohibited offenders whose victims were minors from living or working within 1,000 feet of a school zone. The 2009 Amendment then expanded on that limitation.  The Amendment not only prohibited registered sex offenders from living or working within 1,000 feet of a school zone; it prohibited them from living, working, being present, or "sit[ting] idly," and without a "specific or legitimate reason for being there," within 1,000 feet of school property lines but also the property lines of licensed day care centers, child-care facilities, public parks, playgrounds, recreation centers, and public athletic fields when children under eighteen years old are present.  Just as in *Snyder* then, the Court finds that this factor suggests Tennessee's Act has a punitive effect on Plaintiff.

The Court would hasten to add that these restrictions as the State has applied them in Plaintiff's case and the extent to which they force him to tailor his life around the various public places from which he must maintain a 1,000-foot distance raise questions of fact. *See id.* at 701-02 (citing a report prepared by one of the plaintiff's expert witnesses containing a map of parcels

of land in Grand Rapids, Michigan, with those within 1,000 feet of a school parcel colored blue). While the Complaint never alleges Plaintiff's place of residence (other than to state that he lives in this District), the Complaint plausibly implies that the 2009 and 2010 amendments to the Act changed the manner in which Plaintiff could participate in the school and recreational activities of his children. Accepting all factual allegations in the light most favorable to Plaintiff, the Court concludes he has stated a plausible claim that the Act inflicts what has been traditionally regarded as punishment.

The Complaint also plausibly alleges that the Amendments create an affirmative disability or restraint. The 2009 Amendment prohibiting offenders from being present or just sitting "idly" within 1,000 feet of various public places could plausibly "put[ ] significant restraints on how registrants may live their lives," much as the amendment to Michigan's SORA at issue in *Snyder* "put[ ] significant restraints on how registrants may live their lives" by regulating, in part, where registrants may loiter. This factor also points to the Tennessee Act's punitive effect.

The Act further promotes the traditional aims of punishment. In *Snyder*, the Sixth Circuit explained that

> [Michigan's] SORA advances all the traditional aims of punishment: incapacitation, retribution, and specific and general deterrence. Its very goal is incapacitation insofar as it seeks to keep sex offenders away from opportunities to reoffend. It is retributive in that it looks back at the offense (and nothing else) in imposing its restrictions, and it marks registrants as ones who cannot be fully admitted into the community.

*Snyder*, 834 F.3d at 704. The same is true of the Tennessee Act's zones where sex offenders are prohibited. However, the Sixth Circuit also explained that

> [o]f course, many of these goals can also rightly be described as civil and regulatory . . . "Any number of governmental programs might deter crime without imposing punishment. To hold that the mere presence of a deterrent purpose renders such sanctions criminal would severely undermine the Government's ability to engage in effective regulation" . . . And we accordingly give this factor little weight.

24

*Id.* (quoting *Smith v. Doe*, 538 U.S. 84, 102 (2003)).  While the Act arguably promotes some of the traditional aims of punishment, this Court following *Snyder* gives this factor little weight.

The Court has no trouble finding that the Act has a rational connection to a non-punitive purpose. As in *Snyder*, "the legislative reasoning behind [the Act] is readily discernible; recidivism rates of sex offenders, according to both the Michigan legislature and *Smith*, are 'frightening and high.'"  *Snyder*, 834 F.3d at 704.  The Tennessee General Assembly has found that violent sexual offenders "present an extreme threat to public safety" and that "[s]exual offenders pose a high risk of engaging in further offenses." Tenn. Code Ann. § 40-39-201(b)(1).  It is a legislature's prerogative to conclude that offenders, particularly offenders whose crime involved a child under age 13, pose a risk to the safety of children.  *Smith*, 538 U.S. at 103.  The Court therefore finds the Act has a rational connection to the non-punitive purpose of upholding public safety.

Lastly, Plaintiff has plausible alleged the Act is excessive with respect to its non-punitive purpose. "[T]hose challenging an ostensibly non-punitive civil law must show by the clearest proof that the statute in fact inflicts punishment." *Snyder*, 834 F.3d at 705 (internal citation omitted). Both the Sixth Circuit and the Supreme Court have made clear that courts should look to evidence outside the pleadings, or the lack thereof, in analyzing this factor.  *See id.*  ("[T]he parties point to no evidence in the record that the difficulties the statute imposes on registrants are counterbalanced by any positive effects.  Indeed, Michigan has never analyzed recidivism rates despite having the data to do so"); *Smith*, 538 U.S. at 103-05 ("Empirical research on child molesters, for instance, has shown that, '[c]ontrary to conventional wisdom, most reoffenses do not occur within the first several years after release,' but may occur 'as late as 20 years following release'").  At this juncture, Plaintiff has had no opportunity to present such evidence.  For the foregoing reasons, the Court finds Plaintiff is entitled to present evidence that the Act's provision excluding sex offenders

from a zone of 1,000 feet from the property lines around schools and other protected locations listed in § 40-39-211(d) inflicts retroactive punishment upon him.   Therefore, the Motion is **DENIED** to the extent Defendant seeks dismissal of Plaintiff's claim that the 2009 and 2010 amendments violate the Ex Post Facto Clause.

## II.    Plaintiff's retroactive-punishment Due Process claim is time-barred.

Plaintiff does not dispute that his retroactive-punishment Due Process claim is governed by Tennessee's one-year statute of limitations for personal injury claims.   However, Plaintiff argues the statute of limitations is tolled under the continuing violation doctrine.   For the following reasons, it is not, and Count II is **DISMISSED**.

In § 1983 cases, state law determines which statute of limitations applies, while federal law determines when the statutory period begins to run.   *See Eidson v. St. of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634-35 (6th Cir. 2007).   Section 1983 claims accrue "when the plaintiff knows or has reason to know of the injury which is the basis of his action*." Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015).   However, where the wrongful conduct is continuing, the statute of limitations is tolled as long as the violation continues, as a plaintiff in such a case is "injured anew every day, with each new injury triggering the accrual of fresh cause of action." *Doe v. Haslam*, Nos. 3:16-cv-02862, 3:17-cv-00264, 2017 WL 5187117, at *10 (M.D. Tenn. Nov. 9, 2017) ("*Doe 2862*").   For a continuing violation to exist to toll the limitations period, (1) the defendant's wrongful conduct must continue after the precipitating event that began the pattern, (2) injury to the plaintiff must continue to accrue after that event, and (3) further injury to the plaintiff must have been avoidable if the defendants had at any time ceased their wrongful conduct. *Eidson*, 510 F.3d at 635.   The key question is therefore what the wrongful conduct is, for that is when the clock begins ticking.

In *Doe 2862*, the Middle District of Tennessee considered whether the continuing violation theory tolled the statute of limitations in a case in which the plaintiffs challenged the Act under the Ex Post Facto Clause. *Doe 2862*, 2017 WL 5187117. Looking to the "fundamental nature of the protection embodied by the Ex Post Facto Clause," the court in that case determined that the Ex Post Facto Clause "does not merely protect a defendant from some specific procedurally improper conduct at the time his punishment is set down—it protects him from the punishment itself." *Id.* at *13. The court thus determined that the continuing violation theory applied to those plaintiffs' Ex Post Facto Clause claim, as their punishments were "inflicted on Plaintiffs every day" for as long as the Act was in place. *Id.* By contrast, the fundamental nature of the protection embodied by the Due Process Clause is protection from "procedurally improper conduct." Thus, in a claim alleging retroactive punishment in violation of the Due Process Clause, the violation is the "procedurally improper conduct" imposing punishment, not the punishment itself. In a case such as this alleging that revisions to the Act following a conviction violate the Due Process Clause, the procedurally improper conduct is the revision or amendment of the Act. *See Doe 2862*, 2017 WL 5187117, at *10-14; *see also Doe v. Rausch*, No. 3:20-cv-00728, 2022 WL 481240, at *2-3 (M.D. Tenn. Feb. 16, 2022); *Doe v. Gwyn*, No. 3:17-cv-504, 2018 WL 1957788, at *6 (E.D. Tenn. Apr. 25, 2018). As the most recent Amendment that Plaintiff complains of occurred in 2015, the one-year statute of limitations on the retroactive-punishment Due Process Clause claim has long since run. Therefore, the Motion to Dismiss the Complaint's procedural due process claim is **GRANTED**.

### III.   Plaintiff does not state a plausible violation of his rights to parent, work, and travel.

The Fourteenth Amendment Due Process Clause not only protects procedural rights; it "bar[s] certain government actions regardless of the fairness of the procedures used to implement

them." *Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019) (internal citation omitted).  Plaintiff alleges that the Amendments violate three fundamental rights protected by the Due Process Clause: his rights to parent, work, and travel.  For the following reasons, he has failed to plausibly claim the Act violates these rights, and Count III is **DISMISSED.**

### A. Plaintiff fails to state a plausible violation of his right to parent.

Parents have the right to direct the upbringing and education of their children.  *Barrett v. Steubenville City Schools*, 388 F.3d 967, 972 (6th Cir. 2004).  This right includes the rights to "companionship, care, custody and management" of one's children.  *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 27 (1981).  However, "students do not have a general constitutional right to participate in extracurricular athletics," and parents do not have an unlimited right to control their children's extracurricular activities.  *Seger v. Kentucky High School Athletic Ass'n*, 453 F. App'x 630, 634 ("The fundamental right of parents to control the education of their children does not extend to a right to demand that their children be allowed to participate without restrictions in extracurricular sports").

Plaintiff alleges he is "excluded from taking his minor children to school without requesting permission" and "precluded from participating in their academic and athletic endeavors."  The Sixth Circuit has never held that the right to parent extends to the right to attend a child's extracurricular activities.  In fact, the Court of Appeals has made clear that parents do not have an unlimited right to demand that their children be allowed to participate without restrictions in extracurricular activities.  *See Seger*, 453 F. App'x at 634.  If the right to parent does not allow parents to demand their children be allowed to participate in extracurricular activities with no restrictions, neither can it allow parents to demand they be allowed to participate in such activities with no restrictions.  Moreover, Tenn. Code Ann. § 40-39-211(d)(2)(D) provides that an offender

28

need not even request permission to drop off or pick up the offender's children from school and need only provide written notice of the parent's offender status to the school's principal upon enrollment. Plaintiff's Complaint does not allege he cannot pick up his children from school or attend extracurricular activities; it alleges he must ask permission to do so but fails to allege he has asked permission and been denied. His alleged injury is thus purely speculative, and he has failed to state a plausible claim that the Amendments violate his right to parent.

**B. Plaintiff fails to state a plausible violation of his right to work.**

While the "freedom to choose and pursue a career" is a fundamental right, *Wilkerson v. Johnson*, 699 F.2d 325, 328 (6th Cir. 1983), there is no "general right to private employment." *Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir. 1999). "A barrier to employment in the economy as a whole is distinct from the freedom to choose a particular career or profession." *John Does 1-4 v. Snyder*, 932 F. Supp.2d. 803, 817 (E.D. Mich. 2013), *rev'd on other grounds*, 834 F.3d 696 (6th Cir. 2016).

Plaintiff alleges it is "difficult to obtain employment" because of the Amendments. However, he cites no case law for his assertion that this violates his right to work, or that he even has a generalized right to work. The Middle District of Tennessee has held that the Act does not violate any alleged fundamental right to work. *Doe v. Haslam*, No. 3:16-cv-02862, 2017 WL 5187117, at *16 (M.D. Tenn. Nov. 9, 2017). The Court agrees with the Middle District of Tennessee. The simple fact that the Act may make it more difficult to find employment does not mean Plaintiff is not free to choose a particular profession. Because the amendments do not implicate a fundamental right, they need only survive rational-basis review, under which the amendments are constitutional if there is "any reasonably conceivable state of facts that could provide a rational basis for it." *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 503-04 (6th Cir.

2007) (internal citation omitted).  As the Middle District of Tennessee has held, the Act "'serve[s] the legitimate interest of the State of inhibiting future sexual offenses, particularly against children, while not limiting the ability of Plaintiffs to seek and obtain any type of employment' that does not require Plaintiffs to come into contact with children." *Doe v. Haslam*, 2017 WL 5187117, at *16 (quoting *Does 1-4*, 932 F. Supp. at 817).  Plaintiff has thus failed to state a plausible claim that the Amendments violate his alleged right to work.

   **C.  Plaintiff fails to state a plausible violation of his right to travel.**

   The right of interstate travel is a "virtually unqualified" right.  *California v. Aznavorian*, 439 U.S. 170, 176 (1978).  The Sixth Circuit also recognizes a fundamental right to intrastate travel.  *Cole v. City of Memphis*, 839 F.3d 530, 535 (6th Cir. 2016).  A statute must "significantly interfere[ ] with the exercise of a fundamental right" to be unconstitutional.  *Zablocki v. Redhail*, 434 U.S. 374, 388 (1979).  A statute that creates an "incidental and negligible" burden on the right to travel does not violate that right.  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 535 (6th Cir. 2007).

   Although Plaintiff complains that he cannot take his children to school without permission, Tenn. Code Ann. § 40-39-211(d)(2)(D) provides that an offender need only give a school official written notice to pick up or drop off the offender's children and need not receive permission first.  Plaintiff makes no allegation that he has done so or that he has even attempted or asked permission to pick up or drop off his children at school, and his injury is again purely speculative.  His Complaint therefore fails to state a plausible violation of his right to travel.  For each of these reasons, Defendant's Motion to Dismiss the Complaint's substantive due process claims is **GRANTED**.

   **IV.    Plaintiff does not state a plausible violation of his First Amendment rights.**

Finally, Plaintiff alleges the amendments violate his First Amendment rights, specifically the rights to free speech and free association.  For the following reasons, his Complaint fails to state a plausible violation of these rights, and Count IV is **DISMISSED**.

**A.  Plaintiff fails to state a plausible violation of his right to free speech.**

Plaintiff alleges he "must curtail his use of means of communication such as the internet for fear that any thing he might say or do while on-line be construed as a violation of the Act." Plaintiff fails to explain how his internet usage is curtailed or point to any specific Amendment that forces him to curtail his internet usage, and the Court cannot see how any Amendment Plaintiff complains of would do so.  In his Response to Defendant's Motion, Plaintiff urges the Court to allow his claim to move forward based on its "fact-driven nature."  But Plaintiff has failed to allege any facts beyond complaining that his internet usage is curtailed, which is a legal conclusion couched as a factual assertion that the Court is not obligated to accept as true.

**B.  Plaintiff fails to state a plausible violation of his freedom of association.**

Plaintiff alleges that "the restrictions on where he can live, work, and even stand or sit infringe on his . . . right of association."  Specifically, he says he "is prohibited by the additional restrictions from being in certain places, cannot fully participate in the lives of his children, and is prohibited from marrying his fiancée and living with her due to the presence of her minor children from a previous relationship.

Courts recognize two types of associational freedoms.  First, there is a right of intimate association, which is the right "to enter into and maintain certain intimate human relationships." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617 (1984).  Second, there is a right of expressive association, which is the "right to associate for the purpose of engaging in those activities protected

31

by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* at 618.

The right to intimate association does not flow from the First Amendment but instead falls under the Fourteenth Amendment's substantive due process analysis. *Hartwell v. Houghton Lake Community Schools*, 755 F. App'x 474, 478 (6th Cir. 2018). Nonetheless, to the extent Plaintiff alleges a violation of his substantive due process right to intimate association, he fails to state a plausible violation. While a "direct and substantial" burden on intimate associations is subject to strict scrutiny, lesser interferences are subject to rational basis review. *Anderson v. City of Lavergne*, 371 F.3d 879, 882 (6th Cir. 2004). Courts find a "direct and substantial" burden "only where a large portion of those affected by the rule are absolutely or largely prevented [from forming intimate associations], or where those affected by the rule are absolutely or largely prevented from [forming intimate associations] with a large portion of the otherwise eligible population of [people with whom they could form intimate associations]." *Id.* (quoting *Akers v. McGinnis*, 352 F.3d 1030, 1040 (6th Cir. 2003)).

The intimate association at stake here appears to be Plaintiff's relationship with his fiancée. The Complaint specifically alleges Plaintiff cannot marry her because Plaintiff is prohibited from living with her minor children. However, many married couples do not reside in the same household, and the fact that his fiancée has children he cannot live with does not prevent Plaintiff from marrying her. The Act thus does not create a "direct and substantial burden" on Plaintiff's ability to marry his fiancée. In his Response to Defendant's Motion to Dismiss, Plaintiff argues that "[t]he point of Doe marrying his fiancée is to form a family unit with her and her children." To the extent Plaintiff argues that his right to intimate association is burdened by the fact that he cannot live with his fiancée's children and thus "form a family unit" with them, that burden easily

survives strict scrutiny.   The State of Tennessee has an extraordinarily compelling interest in protecting children from sex offenders. Preventing convicted sex offenders (especially those like Plaintiff whose victims were children) from living with them is a narrow restriction that advances that interest.   To the extent that this restriction indirectly burdens his ability to marry and live with his fiancée, it passes rational basis review for the same reason.

Plaintiff's Complaint fails to allege which restrictions violate his right to expressive association, much less how they do so.   His assertion that "the restrictions on where he can live, work, and even stand or sit infringe on" his right to expressive association is thus a legal conclusion couched as a factual assertion, which the Court is not obligated to accept as true.   His Response to Defendant's Motion to Dismiss cites the 2009 Amendment and the 2011 Amendment allowing public libraries to restrict access by registered sex offenders. But Plaintiff still fails to explain how these restrictions infringe on his right to expressive association.   He does not explain why he needs access to a library to engage in speech, assembly, petition for redress of grievances, or the exercise of religion.   And nor does Plaintiff explain how, given the fact he was already prohibited at the time of his conviction in 2008 from sitting idly within 500 feet of public parks, athletic fields, child-care facilities, etc., being prohibited from an being within an additional 500 feet inhibits his ability to do so.   Therefore, the Motion to Dismiss is **GRANTED** as to Plaintiff's First Amendment claims.

## <u>CONCLUSION</u>

Defendant's Motion is **GRANTED** as to Counts II-IV, and those counts are **DISMISSED**. The Motion is **DENIED** as to Count I to the extent Defendant seeks dismissal of Plaintiff's claim that the 2009 and 2010 amendments violate the Ex Post Facto Clause, but **GRANTED** as to all other amendments to the Act. The Motion is **GRANTED IN PART and DENIED IN PART**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE
Date: January 3, 2023.